## THOMPSON WEIR

*v.*

## ANDREW LEIBERT.

VOLUNTEERS—*construction of certain resolutions adopted by the board of supervisors of Jo Daviess county, March 2d,* 1865, *relative to paying a bounty to volunteers.* The construction to be given to the resolutions of the Board of Supervisors of Jo Daviess county, adopted March 2d, 1865, relative to the payment of a bounty of $200.00 to volunteers, is, that the money thus appropriated should be distributed among the several townships, in proportion to the number of their volunteers, to be paid only to persons enlisting after their adoption,—intending that the several townships should, by adding this sum of $200.00 to their own bounties, make a sum not exceeding $400.00 to be paid to new recruits.

WRIT OF ERROR to the Circuit Court of Jo Daviess county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

The opinion states the case.

Messrs. SMALL & MILLER, for the plaintiff in error.

Mr. D. W. JACKSON, for the defendant in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This is an action for money had and received, based upon the following state of facts:

The contingent of Jo Daviess county, under the last call of the President for volunteers in the late war, was 556 men. This contingent was again divided among the different townships. In February, 1865, the town of Woodbine, of which the plaintiff in error, Weir, was supervisor, appointed a committee to procure volunteers. This committee offered a bounty of six hundred dollars, under which offer, Leibert, the defendant in error, enlisted, and received his money. Subsequently

to this, in March, 1865, the board of supervisors for the county adopted the following resolutions :

" WHEREAS, The President of the United States has again called for volunteers to fill up our armies, in order that our present grand military successes may continue until the rebellion has ceased ; and whereas, it seems to be the wish of the majority of the people of this county, that a draft should not take place, if it can be avoided by paying a reasonable bounty to volunteers ; therefore,

"*Resolved,* 1st. That the finance committee be instructed to borrow the sum of one hundred and eleven thousand two hundred ($111,200) dollars, for the purpose of paying the sum of two hundred ($200) dollars to each volunteer who enlists to fill the quota of 556 men now due from this county, as hereinafter provided.

" 2d. That upon borrowing and receiving said money, and the presentation of the certificate of mustering in, or other evidence of mustering in satisfactory to the committee, the same shall be paid to the supervisor of each of the several townships in the county, paying to each the sum necessary to give each volunteer or drafted man in his township the said sum of two hundred ($200) dollars."

There were, also, three other resolutions adopted, which relate merely to the mode of raising the money, and do not affect the question now before us, and then the following proviso was offered and adopted, as an amendment to the first resolution :

" *Provided, always,* and this loan is granted under the express condition, that after this date no township in this county shall pay to each volunteer over four hundred ($400) dollars, under a forfeiture of said township claim in said county bounty."

Under these resolutions, the plaintiff in error, as supervisor of the town of Woodbine, received, on the 29th of March, $1,000, and on the 18th of April, $800, as the amount due on account of enlistments in that township, among which was reckoned that of the defendant in error. The money received was applied in payment of the money borrowed by the town, and this suit is brought by Leibert to recover the two hundred dollars which he insists should have been paid to him as bounty, under the resolutions of the board of supervisors.

The determination of the case depends on the construction to be given to these resolutions, and the question is not free from difficulty. We have, however, arrived at a different conclusion from that entertained by the circuit court. That court instructed the jury, in substance, that the effect of these resolutions was to give the money directly to the volunteers, whether the volunteers enlisted before or after their adoption, and irrespective of the fact that he had already received from his township more than the two hundred dollars appropriated by the county. It is contended on the other hand, by the counsel for the plaintiff in error, that the board of supervisors intended, in this contingency, to allow the various townships to receive the money for their own reimbursement.

It may be first remarked, that the resolutions, under the ordinary rules of construction, would apply only to volunteers thereafter enlisting. To this it is replied, that the county raised a sum sufficient to pay the bounty to each man of the entire contingent, whether already enlisted or yet to be enlisted. This is true, but it still leaves open the question, as to the purpose for which it was intended the money should be used, where volunteers had already been obtained by the payment of larger bounties. By the terms of the resolutions, the money was to be paid over to the supervisors of the different townships, and unless they were to receive it upon an absolute trust for the benefit of all volunteers, whether enlisted or to be

enlisted, and without discretion on the part of the towns, then it is clear this plaintiff can not recover.

Now, if the board of supervisors intended this unconditional distribution of the fund, what could have been their object? To pay a bounty of two hundred dollars to volunteers who had already enlisted, would have been a simple gratuity, and would in no wise diminish the liability of the county to a draft, which was the object declared in the preamble. Their right to make such a gratuity they must have regarded as very questionable, and the only end they could have had in view, if they really intended to make it, would have been equality between the volunteers in the distribution of their bounty. Yet, instead of securing such object, they would really be defeating it, if they intended the money to be paid to volunteers already enlisted in the town of Woodbine and other towns similarly situated, for by the terms of their proviso, no volunteer thereafter was to receive over four hundred dollars from his township, while the volunteers in Woodbine had already received six hundred.

Now, how can we suppose that an intelligent board of supervisors, while legislating with an express view to the limitation of bounties to four hundred dollars, and that, too, in reference to future volunteers, whom it was so important to secure in order to avoid the draft, could, at the same time, intend to increase the bounty of volunteers already enlisted to just twice that sum? How can we suppose they intended to say, that volunteers already enlisted should have a six hundred dollar bounty raised to eight hundred, but volunteers thereafter to be enlisted should have but four. hundred?

And we can not suppose they were legislating in ignorance as to the bounties that the townships had been paying, for the contrary is indicated by the language of this very proviso, and the amount of bounties paid in the different townships must of necessity have been known to the board through the respective supervisors. While we can not impute to the board

the self-contradiction and unreasonableness which would be involved in such a plan, we can, on the other hand, understand how, as the county was about to borrow money for bounties, they may have thought the most equitable plan would be, to borrow a sum estimated upon the basis of two hundred dollars to each man, and distribute it among the townships in proportion to the number of their volunteers, intending that the townships should, by adding it to their own bounties, make a sum not exceeding four hundred dollars, to be paid to new recruits, and when bounties had been already paid equal to this sum, use the fund in payment of the money borrowed for that purpose. This would preserve equality between the different townships, in the appropriation of a fund raised by county taxation, and as this construction does no violence to the language of the resolutions, we must adopt it, rather than one which would attribute to the board a plan inconsistent and unreasonable. The construction we adopt not only does no violence to the language of the resolutions, but, when they are considered in connection with the proviso, is their most simple and natural interpretation. They do not contain any thing directing the money to be paid to the volunteers already enlisted. They declare in the preamble that it was desirable to avoid a draft by paying a bounty, and in the first resolution direct money to be raised "for the purpose of paying the sum of two hundred dollars to each volunteer who enlists to fill the quota of 556 men, now due from this county." But when this sum, and more, had been already raised and paid, and the volunteer secured, no reason for paying him this additional sum would exist, but it would be reasonable that the different townships, which had more or less filled their quotas, should be placed on an equality, and, therefore, by the second resolution, the whole fund is distributed among them, and by the proviso, a bounty of more than four hundred dollars is forbidden under penalty of forfeiture of what is termed the "township claim in said county bounty."

One of the witnesses states, that after the county bounty was raised, he enlisted in this same town of Woodbine, and received only four hundred dollars. This shows what inequality would have been created between different volunteers, if these resolutions had then received the construction it is now sought to give them. In fact, they would probably have defeated their own object.

We are of opinion the plaintiff was not entitled to a verdict, and the judgment must be reversed.

*Judgment reversed.*